## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | Criminal No. **PJM 04-0559** |
| | * | |
| **WILLIAM L. HANDY, JR.,** | * | |
| | * | |
| Defendant. | * | |

### <u>MEMORANDUM OPINION</u>

William L. Handy, Jr. has filed a Motion for Compassionate Release, ECF No. 783, the Government has responded in Opposition, ECF No. 794, and Handy has replied, ECF No. 798. For the reasons set forth below, the Court **GRANTS** the Motion and will reduce Handy's sentence to time served.

### I.

On January 30, 2007, a jury found Handy guilty of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count I); use of a communications facility in furtherance of a narcotics offense, in violation of 21 U.S.C. § 843(b) (Counts II, II, and IV); and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841 (Count V). ECF No. 416. On April 13, 2007, Handy, *pro se*, appeared for sentencing before Judge Alexander Williams of this Court, who adopted the factual findings and advisory guideline applications in the Presentence Report ("PSR") and determined that Handy's base offense level was 38 under U.S.S.G. § 2D1.1 based on an attribution of 184 kilos of cocaine to him. Statement of Reasons ("SOR") at 1; PSR at ¶¶ 32, 33. Handy's total combined offense level was determined to be 44,[1] with a criminal history category of II. PSR

---

[1] An offense level greater than 43 is treated as an offense level of 43, pursuant to U.S.S.G. § 5A, n.2.

at ¶¶ 41, 48. Accordingly, the guideline range for imprisonment was life. SOR at 1. Judge Williams, while noting Handy's lack of "remorse or recognition," "lies," and "awesome display of disrespect," ultimately granted a variance from the guideline range based on a review of the 18 U.S.C. § 3553(a) factors and after noting that a life sentence would not be appropriate. ECF No. 783-3. Handy received a sentence of 360 months as to Counts I and V, and 48 months as to Counts II–IV, to run concurrently. Judgment at 2; SOR at 2-3.

Until 2014, Handy filed a stream of motions in both this Court and in the Fourth Circuit, all of which were denied. In October 2016, he suffered a stroke which caused him to lose function of the right side of his body and the ability to speak. ECF No. 783-8. Though he completed five months of physical therapy and occupational rehabilitation, *id.*, he still has continued to have "right-sided deficits" and primarily uses a wheelchair, ECF No. 794-1. It is undisputed that he suffers from lupus, hypertension, asthma, arthropathy, Reynaud's syndrome, and anemia, among other health conditions. *Id. See also* ECF 783-9.

The Medical Officer at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"), where Handy was previously in custody, noted in a May 22, 2018 report that Handy was "unable to walk and [was] confined to his wheelchair or bed 24 hours a day" and as such, was "unable to maintain all [activities of daily living] due to lack of use of the right upper extremity and needs assistance with most activities." ECF No 783-9. On June 8, 2018, the Warden at FMC Lexington, submitted a memo to the Bureau of Prisons ("BOP") recommending that Handy receive a reduction in his sentence due to his "incurable and progressive in nature" condition. ECF No. 783-8. The memo, which also attached the Medical Officer's May 22, 2018 report, repeated portions of the report, including the finding that Handy was unable to walk and unable to "maintain

activities of daily living due to lack of use of his right hand and need[ed] assistance with most activities." *Id.*

In a July 17, 2018 memo, the BOP denied Handy's request for a reduction in his sentence, overruling the FMC Lexington Warden's factual findings and citing its own findings that Handy "is capable of self-care and is not confined to a bed or chair for more than 50 percent of his waking hours." ECF No. 783-16. As such, the BOP concluded Handy did not meet the BOP guidelines for an inmate who could receive a reduction in his sentence due to a debilitated medical condition, which it defined as an inmate who is "(1) completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or (2) capable of only limited self-care and confined to a bed or chair for more than 50% of waking hours." *Id.*

After FMC Lexington, Handy was transferred to the Federal Correctional Institute, Terminal Island ("FCI Terminal Island"), and on March 28, 2019, through counsel, Handy submitted another request for a reduction in his sentence to the warden at his new facility. ECF No. 783-19. While the request was pending, he filed a Motion for Compassionate Release in this Court on September 3, 2019. ECF No. 783. On September 24, 2019, the Government filed a Motion to Stay Consideration of the Motion for Compassionate Release to allow the BOP to complete its review of Handy's request. ECF No. 786. Attached to the Government's Motion was a July 19, 2019 Medical Summary from the Clinical Director at FCI Terminal Island, indicating that Handy met the debilitated medical condition criteria and noting that he "requires assistance to dress himself and with transfers to/from wheelchair and bed." ECF No. 786-1. The Court granted the Motion to Stay Consideration on October 22, 2019. ECF No. 790.

On January 22, 2020, the Government filed a response in Opposition to Handy's Motion, this time attaching an October 22, 2019 BOP letter to the Warden at FCI Terminal Island denying

3

Handy's request for a reduction in his sentence based on a debilitated medical condition. ECF No. 794. Once again, citing BOP internal guidance with respect to the definition of a "debilitated medical condition," the BOP found that Handy "is capable of performing the majority of the activities of daily living" and "requires minimal assistance with getting dressed, entering and exiting the shower, and traveling long distances." ECF No. 794-1. Furthermore, the BOP found that Handy "is not confined to a bed or chair for more than 50 percent of his waking hours." *Id.* However, the BOP did acknowledge Handy's stroke and various medical conditions and the fact that he "primarily uses a wheelchair" and "a pusher" for long distances. *Id.*

Handy replied on March 13, 2020. The Motion is now ripe for the Court's consideration.

II.

Handy seeks release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Until recently, courts were unable to entertain compassionate release requests of a defendant except upon motion by the Director of the Bureau of Prisons. *See, e.g.*, *United States v. Fletcher*, 2014 WL 12824234 (D. Md. Apr. 14, 2014). However, the 2018 First Step Act, among other things, amended § 3582(c) so as to allow courts to consider compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(C)(1)(A). If a defendant has exhausted his administrative remedies, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that… (i) extraordinary and compelling reasons warrant such a reduction." *Id.* The defendant generally bears the burden of establishing that a sentence reduction is warranted. *United States v. Stowe*, 2019 WL 4673725 at *2 (S.D. Tex. Sept. 25, 2019).

4

In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." In U.S.S.G. § 1B1.13, the Sentencing Commission provided examples of "extraordinary and compelling reasons," including when a defendant is

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).

The defendant must also not present "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and the reduction must be otherwise consistent with U.S.S.G. § 1B1.13. U.S.S.G. § 1B1.13.

In addition, the BOP can determine "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. 1B1.13, cmt. n.1(D). [2]

### III.

It is undisputed that Handy has exhausted his administrative remedies with the BOP. Since following the passage of the First Step Act, the Court is no longer hamstrung by the BOP's decision not to file a motion on Handy's behalf, the Court considers for itself whether Handy meets the

---

[2] Because U.S.S.G. § 1B1.13 has not been updated since the passage of the First Step Act, *see United States v. Jodi Zils Gagne Defendant*, 2020 WL 1640152, at *2 (D. Conn. Apr. 2, 2020), many courts across the country have held that a district court in addition to the BOP can determine "an extraordinary and compelling reason" to grant compassionate release not already articulated in subdivisions A through C, *see, e.g.*, *United States v. Redd*, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020); *United States v. Young*, 2020 WL 1047815, at *8 (M.D. Tenn. Mar. 4, 2020).

requirements for compassionate release, considering first whether Handy has demonstrated "extraordinary and compelling reasons" for his sentence to be reduced.

The Government argues that Handy has not demonstrated "extraordinary and compelling reasons." The Government points to U.S.S.G. § 1B1.13, cmt. n.1(A)(ii) which limits relief to inmates whose ability to "provide self-care within the environment of a correctional facility" is "substantially diminishe[d]" by their alleged condition(s). The Government then cites as "further guidance" the BOP regulation that appears in BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205 ("BOP Program Statement 5050.50"). This statement provides that the BOP should consider a reduction in sentence if the inmate is "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair" or "capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." *Id.* at 5.

What is noteworthy in this case is that two correctional institutes recommended granting Handy's request for a reduction in his sentence under BOP Program Statement 5050.50. But twice the BOP overturned the factual findings of these institutions, finding that Handy is not in a "debilitated medical condition" as he is "capable of self-care" and "is not confined to a bed or chair for more than 50 percent of his waking hours." ECF Nos. 783-16 and 794-1. The Government argues that BOP Program Statement 5050.50 should be given "some weight" in defining "extraordinary and compelling reasons" under U.S.S.G. § 1B1.13, cmt. n.1(A)(ii), but also seems to imply, without citing any case law in support, that the BOP's factual findings should be given deference as well.

The Court is not persuaded by the Government's argument. U.S.S.G. § 1B1.13, cmt. n.1(D) states the BOP may determine "an extraordinary and compelling reason *other than, or in*

*combination with*, the reasons described in subdivisions (A) through (C)." (emphasis added). The words "other than, or in combination with" imply that the BOP may determine *additional* grounds, an interpretation the Government seemingly agrees with, since it states that the guidelines set forth in BOP Program Statement 5050.50 contain standards that are "both more extensive than, and slightly different from, those set forth under U.S.S.G. § 1B1.13" and "a court may grant compassionate release not only on grounds specified by the Sentencing Commission, but also those set forth in the relevant BOP regulation governing compassionate release." In addition, courts across the country have granted relief without considering BOP Program Statement 5050.50. *See, e.g.*, *United States v. Muniz*, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020); *United States v. Colvin*, 2020 WL 1613943 (D. Conn. Apr. 2, 2020). *But see United States v. Jordan*, 2020 WL 1640097, at *3 (M.D. Fla. Apr. 2, 2020) (finding that BOP Program Statement 5050.50 "is entitled to at least some deference" if not regular deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). So while the Court believes U.S.S.G. § 1B1.13, cmt. n.1(A) may be considered independently of BOP Program Statement 5050.50, it need not go that far in the present case.

Just focusing on the narrower grounds for relief set forth in BOP Program Statement 5050.50, and even affording the BOP's factual findings some deference[3], the Court believes Handy

---

[3] The Court does not mean to suggest that it is obligated to defer to the BOP's factual findings in any respect. Multiple courts across the country have found that, in the context of Subdivision D of U.S.S.G. § 1B1.13, cmt. n.1, the First Step Act allows district courts to exercise the same discretion as the BOP director when considering a Motion for Compassionate Release. *See, e.g.*, *United States v. Beck*, 2019 WL 2716505, at *9 (M.D.N.C. June 28, 2019) ("Read in light of the First Step Act, it is consistent with the old policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the [Bureau of Prisons'] Director in evaluating motions by defendants for compassionate release."); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) ("Therefore, if the FSA is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it."); *United States v. Brandon Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (holding the same). Furthermore, "if the Director of the BOP were still the sole determiner of what constitutes an extraordinary and compelling reason, the amendment's allowance of defendants' own § 3582(c)(1)(A) motions for reduction of sentence would be to no avail" and would "contravene the explicit purpose of the new amendments." *United States v. Cantu*, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019). Though

has met the criteria set forth in BOP Program Statement 5050.50, precisely as the Warden of FMC Lexington and the Clinical Director at FCI Terminal Island have stated in their recommendations to reduce Handy's sentence, and even consistent with what the BOP stated in their memos ultimately denying Handy's requests for a reduction in his sentence. The Warden of FMC Lexington found that Handy was "unable to walk and is confined to his wheelchair or bed 24 hours a day" and "unable to maintain activities of daily living." ECF No. 783-8. The Clinical Director at FCI Terminal Island found that Handy is "[c]ompletely disabled" or "[c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." ECF No. 786-1. Even the BOP found that Handy "primarily uses a wheelchair" but needs a "pusher" for long distances, and has "right-sided deficits." ECF No. 794-1. These findings are fortified by the statement of his "pusher" or "inmate companion," who says that Handy is "always in a wheelchair when he is out of his housing unit" and needs help with activities such as breaking up food into small pieces, fetching a meal tray, opening packaging, and clipping toenails due to his right hand being "completely deformed." ECF No. 798-1. Based on the foregoing, the Court concludes that Handy is "capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours" under BOP Statement 5050.50 and is clearly "(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

Furthermore, the Court is convinced that Handy presents no danger to the safety of any other person or to the community. *See* U.S.S.G. § 1B1.13(2). The crimes for which he is

these cases address Subdivision D of U.S.S.G. § 1B1.13, cmt. n.1, they explain the purpose of the First Step Act's amendment to § 3582.

incarcerated were non-violent offenses, and though, to be sure, he has a criminal record, his prior offenses were non-violent as well. PSR ¶¶ 45, 46. And, significantly, Handy has not had a single disciplinary infraction in the past ten years. *See* ECF No. 783-7. He will also be on supervised release for five years during which time he will be closely monitored by the Probation Office. *See* ECF No. 783-2. Though he may have shown a complete lack of remorse at sentencing for his actions, it appears that he has since taken responsibility for his actions. ECF No. 783-20 (personal statement dated October 13, 2015 acknowledging he was "stupid" and has "destroyed a lot of lives."). In addition, the Health Care Unit Manager at FMC Lexington wrote in his June 8, 2018 memo to the Warden that "the Unit Team believes inmate Handy's release provides a minimal risk to the community due to his strong community ties and his abundant resources." Lastly, given his serious medical condition and age (56), the Court believes he has a limited ability to reoffend.

Upon release, Handy intends to reside in Longwood, California with his sister in a bedroom on the main level of her house. ECF No. 783-14. His sister has stated that, along with their sister and brother, she can assist with care and/or transportation. *Id.* This plan has been approved by the U.S. Probation Office in the Central District of California. ECF No. 783-15.

In all, Handy has demonstrated "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). A reduction of his sentence would be consistent with U.S.S.G. § 1B1.13.

IV.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court must also take into account the factors outlined in 18 U.S.C. § 3553(a). Those factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" and (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

Handy was an integral leader of the drug trafficking conspiracy that involved transporting very large quantities of drugs on the West Coast to the East Coast in hidden compartments of vehicles. *United States v. Hall*, 551 F.3d 257, 263 (4th Cir. 2009). The PSR attributed **184 kilograms** of cocaine to Handy. At sentencing, Judge Williams commented that the amount of drugs attributable to Handy was "probably more than [he had] seen in 12 years here on the bench." ECF No. 783-3. In addition, Judge Williams characterized Handy as showing "a pretty awesome display of disrespect" throughout the proceedings, including by giving testimony that "was, quite candidly, just not believable—it was lies." *Id.* In fact, the PSR included a two-level increase in Handy's total offense level for obstruction of justice because he provided false testimony during trial. PSR at ¶ 38.

There is no question that Handy's offenses were serious and that his behavior throughout trial was reprehensible. That said, he has served what amounts to at least 227 months when taking into account credit for time served, which amounts to almost two-thirds of his 360 month sentence. Of those charged in the same original indictment in Maryland as was he, Christopher Hall is serving the second longest sentence, 262 months after this Court reduced his sentence pursuant to 18 U.S.C. § 3582(c)(2). 04-cr-559-8, ECF No. 725. [4]

Indeed, the Health Care Unit Manager at FMC Lexington concluded that "the release of inmate Handy would not minimize the severity of the offense due to his current medical condition, his age, and his limited ability to reoffend." ECF No. 783-10.

---

[4] Richard Briscoe was sentenced to 151 months imprisonment, later reduced to 127 months. 04-cr-559-1 PJM, ECF No. 472. Stevie Burton was sentenced to 352 month, later reduced to 211 months, 04-cr-559-3 PJM, ECF No. 738. Baron Watkins was sentenced to 188 months, later reduced to 120 months. 04-cr-559-5, ECF No. 667. Issac Rashad Belt served a sentence of 120 months imprisonment after his sentence was reduced from 151 months. 04-cr-559-6 PJM, ECF No. 671, Anthony Jones's sentence was also reduced to 120 months. 04-cr-559-9, ECF No. 720. Evans Ray, Jr. was granted clemency by President Barack Obama. 04-cr-559-10, ECF No. 722. After a jury trial, Edward Kelly was acquitted of all charged counts. PSR ¶ 11.

The Court has already addressed the 18 U.S.C. § 3553(a) factors as to the nature and circumstances of the offense and the history and characteristics of the defendant, and the need for the sentence imposed. Taking all the foregoing into account, the Court concludes that Handy has served a term "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

V.

In sum, Handy meets the criteria for compassionate release. He has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons" for a reduction of his sentence, and a reduction of his sentence is consistent with the factors outlined in 18 U.S.C. § 3553(a). Accordingly, Handy's Motion for Compassionate Release, ECF No. 783, is **GRANTED**. Handy shall therefore be **RELEASED WITHIN THREE (3) DAYS**. All other terms and conditions of Handy's sentence and supervised release remain in full force and effect, and there will be two additional conditions of supervised release: (1) immediately following his release from custody, Handy shall remain self-quarantined for 14 days in his sister's home in Longwood, California, and (2) Handy shall comply with all directives of federal, state, and local governments related to public health, including COVID-19.

A separate Order will **ISSUE**.

_____
_____/s/_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**April 28, 2020**